DARIUS CHIPMAN, Appellee,

*against*

JAMES SAWYER, Sheriff of Chittenden County.

DEBT on an escape.

Summon *James Sawyer*, Esquire, sheriff of *Chittenden* County, to appear, &c. and answer unto *Darius Chipman*, in a plea, &c. that to the plaintiff the defendant render and pay the sum of 69 dols. 25 cts. which he justly owes, and unjustly detains from him; for that whereas the *plaintiff, on the demise of James M'Gregor, Esquire*, of *Londonderry*, State of *New-Hampshire*, heretofore, to wit, by the consideration of the County Court holden at *Rutland*, within and for the County of *Rutland*, on the *Monday* next preceding *the third Tuesday of March*, 1793, recovered judgment against *Janna Churchill*, late of *Hubbardton*, in the County of *Rutland*, now of *Georgia*, in *the County of Franklin*, for the sum of eight cents damages, and for the sum of 69 dols. 27 cts. costs of suit, as by the files and records of the County Court, ready here in Court to be shewn, may fully appear; which said judgment yet remains in full force, strength, and effect, in no wise reversed, annulled, paid or satisfied; and the plaintiff further saith, that the said damages and costs, so by him in manner and form aforesaid recovered, being unpaid and unsatisfied, he the plaintiff, on the 15th of *April*, 1799, prayed out his certain writ of execution of that date, at the price of twenty-five cents, in due form of law, for the sum aforesaid, made returnable in sixty days from the

*Nominal plaintiff in ejectment cannot maintain an action against sheriff for an escape of a defendant committed on an execution in his name for the damages and costs recovered in the action of ejectment.*

*Sheriff, as keeper of the prison to which is committed a debtor from another County, not liable for a negligent escape of such debtor.*

date, signed by *Nathan Osgood*, Clerk of said County Court, directed to the sheriff of *Franklin* County, &c. commanding him to levy the said writ of execution on the goods, chattels or lands of the said *Janna*, if to be found within his precincts, sufficient to pay and satisfy the said sums contained in said writ of execution, together with fees for levying the same ; and for want of such goods and chattels, to be by the said *Janna* shewn to him, to take the body of the said *Janna*, and him commit to the keeper of the *gaol in Burlington, in the County of Chittenden*, within said prison, there to be safely kept until he the said *Janna* should pay and satisfy the said sums contained in said writ of execution, together with all legal fees which might accrue in consequence of said commitment, or until he should be discharged by the said *Darius* or otherwise, by order of law ; which said writ of execution afterwards and before the return day thereof, to wit, on the first day of *June*, 1799, was by the plaintiff delivered to *Prince B. Hall*, who then was, and for more than sixty days after continued to be sheriff of the County of *Franklin*, and afterwards and before the return day of said writ of execution, to wit, on the 7th day of *June*, 1799, he the said *Prince B. Hall* continuing to be sheriff of the County of *Franklin* as aforesaid, for want of goods and chattels of the said *Janna*, by virtue of said writ of execution arrested and took the body of the said *Janna*, and him committed to the defendant, who then was and still is sheriff of the County of *Chittenden*, and by virtue of his said office of sheriff, keeper of the common gaol in said County of *Chittenden*, within the said prison ; and the defendant then and there, to wit,

on the 13th day of *June*, 1799, at *Burlington* as
aforesaid, received the body of the said *Janna* as
aforesaid, him safely to keep within said prison, ac-
cording to the precept of said writ. Nevertheless the
defendant, not regarding the duties of his said office
as sheriff as aforesaid, after the commitment of the
said *Janna* as aforesaid, he the defendant being sheriff
as aforesaid, to wit, on the said 13th day of *June*, 1799,
at *Burlington* aforesaid, suffered the said *Janna* to go
at large out of said prison whither he would, and so
to escape from said prison and the liberties thereof,
whereby an action hath accrued to the plaintiff, to
have and demand of and from the defendant the said
sum of 69 dols. 25 cts. yet, &c. *ad damnum*, 100
dollars.

The defendant craved *oyer* of the record in the
plaintiff's declaration mentioned, which is read to
him in the words, &c.

Be it remembered, that at County Court begun
and holden at *Rutland*, within and for the County of
*Rutland*, on the third *Tuesday* of *March*, 1793, pre-
sent in Court the Chief Judge and Assistant Judges,
*Janna Churchill*, of *Hubbardton*, in the County of
*Rutland*, was summoned to appear before said Coun-
ty Court, at this term, begun and holden at *Rutland*,
within and for said County, on the third *Tuesday* of
*November*, 1788, then and there to answer unto *Da-
rius Chipman*, of said *Rutland*, in a plea of trespass
and ejectment; whereupon the plaintiff complains,
that *James M'Gregor*, of *Londonderry*, in the State of
*New-Hampshire, executor of the last will and testa-
ment of David M'Gregor, deceased*, had, on the 10th
day of *March*, now last past, granted and to farm

letten to the plaintiff, a certain messuage or farm of land bounded as follows. Plaintiff here describes the land as being part of Lot No. 19. severed to the proprietary right of *Joseph Purdy*, and part of Lot No. 20. severed to the right of *John Moore*, situated, lying and being in *Hubbardton* aforesaid, and now or late in the tenure and occupation of *Janna Churchill* or his assigns; to have and to hold the said tenements, with the appurtenances thereof, to the plaintiff and his assigns, from the first day of *January* then last past, to the full end and term of fifteen years from thence ensuing, and fully to be completed and ended, by virtue of which said demise the plaintiff entered into the tenements aforesaid, with the appurtenances, and was thereof possessed until the 10th day of *April* now last past, when the defendant, with force and arms, entered into the tenements with the appurtenances, in and upon the possession of the plaintiff, and ejected, expelled and amoved the plaintiff from the possession aforesaid, his said term therein not being expired, and kept out, and still keeps out the plaintiff from his possession aforesaid, and then and there did other injuries to the plaintiff, against the peace, and to the damage of the plaintiff, 50*l.* lawful money, and to recover possession of the said messuage and tenements, with his said damages and just costs, the plaintiff brings suit. Writ dated *May* 29th, 1788. At which term comes the said *Darius Chipman*, and the said *Janna Churchill* by his attorney *Israel Smith*, and the said *Janna* entered into the common rule, and confessed the lease, entry and *ouster* in the plaintiff's declaration, and consented on the record to insist upon the title only under the general,

issue by him to be hereafter pleaded, and craved leave to imparl, which was granted unto him by the Court, and the said cause was continued from term to term, until the term of the County Court holden at *Rutland*, within, &c. on the third *Tuesday* of *November*, 1792. At which term comes the plaintiff by his attornies *Daniel* and *Darius Chipman*, and the defendant by his attornies *Isaac Tichenor* and *Israel Smith*, and the defendant pleads that he is not guilty of the force and injury as has been complained of by the plaintiff, as in his declaration alleged, and thereof puts himself on the country for trial by his said attornies, and the plaintiff doth the like by his attornies; and a Jury of good and lawful freeholders of the County were impanelled and sworn to try the issue aforesaid, who on their oath say, that as to Lot No. 19. severed to the proprietary of *Joseph Purdy*, part and parcel of the tenements in the plaintiff's declaration described, the defendant is not guilty in manner and form as the plaintiff in his declaration hath alleged ; and as to part of Lot No. 23. severed to the right of *John Moore*, part and parcel and residue of the premises described in the plaintiff's declaration, the Jury on their oath do say, that the defendant is guilty of the trespass and ejectment laid to his charge in manner and form as the plaintiff in his declaration hath alleged, and assess damages at one shilling. Whereupon it is considered by the Court, that the plaintiff recover of the defendant his term yet to come of that part and parcel of the lands described in the declaration, of which the defendant stands convict of the trespass and ejectment by verdict of the Jury, together with the said one shilling damages, and his

costs. From which judgment the defendant moved for and was admitted to a review of said cause, to be heard and tried before us the Court at the next term of the same Court next to be holden at *Rutland*, within and for, &c. on the third *Tuesday* of *March*, 1793. At which term comes the plaintiff by his said attornies, and the defendant by his attorney *Cephas Smith*, who pleads and says, that as to Lot No. 20. severed to the proprietary right of *John Moore*, he confesses himself guilty, but as to the residue of the premises described in the plaintiff's declaration, to wit, that part and parcel of the premises severed to the proprietary right of *Joseph Purdy*, he says he is not guilty of the trespass and ejectment complained of in the plaintiff's plaint, and this he prays may be inquired of by the country, and the plaintiff doth the like by his attornies. Whereupon a Jury of good and lawful freeholders of said County were impanelled and sworn, who on their oath say, that the defendant is guilty of the trespass and ejectment complained of in manner and form as the plaintiff in his declaration hath alleged, as to Lot No. 20. in the declaration mentioned, and assess damages at sixpence, and for his costs. Whereupon it is considered by the Court here, that the plaintiff recover of the defendant his term yet to come in that part and parcel of the lands described in the declaration, to wit, that part and parcel of the premises of which the defendant stands here convict, by verdict of the Jury, of the trespass and ejectment whereof he may have possession, together with sixpence damages, and his costs taxed here by the Court at 69 dols. 17 cts. whereof he may have execution. Writ of possession issued 9th day of

*April*, 1799. All which being heard and read, the defendant demurs specially to the declaration. Joinder in demurrer.

And for causes of demurrer, the defendant takes the following exceptions:

First. That the judgment in the original action is void, because rendered virtually in favour of *James M'Gregor*, lessor of the plaintiff, as executor of *David M'Gregor*, deceased; executor having no right to maintain an action of ejectment for lands of which testate died seised.

Secondly. The execution was illegally issued, the judgment having been rendered *March* term, of the County Court, 1798, and the execution having issued *April* 15th, 1799, more than a year and a day after judgment rendered.

Thirdly. That *James Sawyer*, sheriff, is not in this case liable; but the liability, if any, is on the County of *Chittenden*.

Fourthly. That the nominal plaintiff in ejectment cannot maintain this action.

Fifthly. That provided the commitment was legal, *Janna Churchill* being committed to the gaol in *Chittenden* County by the sheriff of *Franklin* County, the sheriff of *Chittenden* County is not liable.

*Cook*, in support of the demurrer. This is an action brought by the nominal plaintiff in ejectment against the sheriff of *Chittenden* County, for the escape of *Janna Churchill*, the tenant in ejectment, from the gaol in that County, who was committed by the sheriff of *Franklin* County, upon an execution in

12

Chipman
v.
Sawyer.

favour of the nominal plaintiff; the record of which judgment is exhibited on *oyer*.

The first exception, that the original action was brought by a person not entitled to maintain such action, is well founded. *James M'Gregor*, as *executor* to *David M'Gregor*, was a stranger to the suit. The old maxim is, ' the land to the heir, and the chattels to the executor or administrator.' In some cases, the executor or administrator may stand in the shoes of the deceased, as on contracts; not so on torts. The judgment was rendered before the existence of the present statute, which enables the executor and administrator to maintain actions both on contracts and torts. The action of ejectment is a mixed action; when stripped of its legal fiction, the lessor of the plaintiff is the real plaintiff. It is observable, that in all the systematic books on the subject, under the head of who may bring such action, the person considered as capable of bringing it is always the lessor of the plaintiff. The nominal plaintiff is always considered as a fictitious being, representing by circumlocution the person of the real plaintiff, styled by fiction the lessor. Judgment in favour of the executor is not merely erroneous, but void. *Com. Dig.* vol. 1. p. 483, 484, 485. under the head, what action executor shall have.

By common law, executors and administrators had no right to bring actions of tort in the name of the deceased. It is true the *English* statutes have in some cases cured this, but not as to ejectment.

In the State of *Connecticut*, executor may maintain an action on contracts, not on torts.

*Vermont* Stat. vol. 1. p. 144. Act passed 10th March, 1797.

*Swift's System,* Vol. 1. p. 429.

The statute which governed at the rendering this judgment empowered executors and administrators to maintain suits in the name of persons dying *pending* suits. The common law was left to govern as to the *bringing* actions, and they were not enabled to maintain such actions as they were precluded from instituting by the common law.

Chipman
v.
Sawyer.

*Hasw.* Ed. *Vermont* Stat. p. 275.

We shall cite a case decided in this Court, fresh within the memory of the bench : Plaintiff brought his action of trespass for burning a grist-mill, and died pending the suit. Administrator was suffered to prosecute under the statute read, in the name of the intestate. Verdict for the plaintiff. Motion in arrest of judgment, which prevailed, upon the principle that administrator could not maintain action upon tort in the name of the intestate.

Ibid.

We shall also notice the case of *Edson*, decided in *Windsor* County, where the plaintiff died pending the suit, and the executor came in to support the action in the name of the testate, and this Court decided, that the action did not survive because it was an action on tort.

The original judgment was therefore void, and not merely erroneous, which might have been rectified by a writ of error ; and the sheriff, or, if he had been protected by his process, the plaintiff, would have been liable to an action for false imprisonment at the suit of *Janna Churchill.*

The second exception arises out of the record of the judgment, which is to be taken as part of the declaration, being proferted therein, and spread upon the record on *oyer.*

Chipman
v.
Sawyer.

2 *Vin. Abr.* p. 125.
1 *Stra.* 399.

No primary execution ought to be issued more than a year and a day after the judgment. There must be a chain of executions, an *alias, pluries,* &c. to keep the *judgment alive.* When a judgment is suffered to lie dormant six years after it is rendered, or any time beyond a year and a day, it lapses into a contract upon record, and must by *scire facias* be revived into a new judgment.

We might here notice the awkward manner in which the record of the final judgment in the County Court is made up. The defendant, it appears, pleaded not guilty as to part of the premises, and confessed himself guilty of the trespass and ejectment as to the residue. If we can learn any thing from the record, the verdict finds the defendant guilty of the trespass, &c. upon that section of the premises which was not in issue, and is silent as to that part which was solely under the consideration of the Jury. But as this may be imputed to clerical inaccuracy, and might possibly have been cured by writ of error, we shall not insist upon it in the present argument.

The third exception we shall blend and consider with the fifth.

The fourth exception states, that nominal plaintiff cannot maintain this action. In *Burrow's Reports,* vol. 2. p. 665. *Aslin* v. *Parkin,* it is held, that nominal plaintiff may maintain an action for mesne profits. It will be necessary to examine the principles which govern this case, and the ancient doctrines of ejectment. The action of ejectment was invented to get rid of the tedious delays caused by the bringing real actions. Anciently the demise was real, and the now nominal plaintiff a real sufferer; but the action

being found beneficial, it was continued to try title. But in *England* they are still obliged to adhere in some measure to the old forms, and have respect to those principles upon which the action was primarily introduced. But the action of ejectment introduced in this country has been held *in toto* fictitious. Indeed a late statute has stripped it of all its fictions. The doctrine held in *England* cannot therefore apply here. The nominal plaintiff cannot be considered here even as a trustee for his lessor, and there can be no doubt that here the *lessor* in ejectment may maintain an action for the mesne profits : but in *England* they are bound by precedents coeval with the action itself, and which their Courts suffered to foster a novel but beneficial action. In this government the reason of those precedents fail, and their authority with it. Here the nominal plaintiff is merely so. *John Doe* or *Richard Lackland* might as well have been inserted in the writ as *Darius Chipman*—this person *in esse*. In recovery had by *Doe* or *Lackland,* if execution issues in their names, and money is collected, to whom does it enure ? who shall receipt the money to the sheriff when collected ? In the present case, must the lessor be driven to the old doctrine of uses and trusts to recover it from this *real nominal* plaintiff ? The lessor of the plaintiff must *respond* the costs if he fail in his suit, and why not bring his action to *receive* if he recover ? The practice has been various in the several Counties in this State ; but it has been most usually practised in nonsuit on ejectment, for defendant to take out execution against the lessor : though in some Counties the defendant has taken out his execution for costs against the no-

minal plaintiff, and obtained a mere formal *non est* to be returned upon it, and then brought a *scire facias* against the lessor, in which he was obliged to declare that he had caused the execution to be presented to the said *John Doe*, to be by him satisfied, *risum te-neatis*. But in no case, where the name of some inhabitant of this State, of legal age, has been inserted in the writ as nominal plaintiff, has any writ of execution upon nonsuit, discontinuance, verdict, or failure of the lessor, been issued against that questionable heteroclite personage, a real nominal plaintiff. If judgment for costs in the original suit had gone the other way, and defendant had brought a suit against my brother *Chipman*, we should have heard him declare, that the *Darius Chipman*, nominal plaintiff, was a mere *John Doe;* a nominal fictitious being, and not *Darius Chipman*, the substantial suitor, who now sturdily demands our property.

The fifth exception, which includes the third, is founded on our own statutes. The 37th section of the judiciary act provides in substance, that when a sheriff of a County in which there is no legal gaol, holds an execution against a person residing within his bailiwick, he shall have power to commit such person to the gaol in some one of the nearest counties.

In section 40th of the same act, it is enacted, " that in all cases wherein persons shall be committed to gaol under the directions of this act, who shall escape therefrom, the County from which such prisoner was sent shall be liable to pay all damages and costs to the person or persons who shall be injured by such escape."

And in confirmance of this, the act relating to gaols and gaolers, section 4th, enacts, "that the sheriffs of the several Counties in this State, shall be liable for all escapes made from the gaols in the Counties to which they severally belong, *excepting such prisoners as are committed from some other County*."

Here the statute is so express that it needs no comment. But further, in the proviso to the last cited section, it is provided, that when such sheriff shall make it appear that the escape was made through the insufficiency of the gaol, the County and not the she- Ibid. riff, shall be liable. This applies to the third exception.

And further, in a second proviso to the same sec- Ibid. tion, it is enacted, " that when any action shall be brought against any sheriff for the escape of any prisoner, such sheriff may, on trial of the cause, produce evidence of the circumstances, situation and property of the prisoner when such escape was made, and all the circumstances attending such escape, and the creditor shall recover no more than his reasonable and just damages which he shall have sustained in consequence of such escape, and his legal costs." But it may be said, the question returns, what sheriff and County are here intended? Surely the sheriff and County wherein the debtor resided when arrested on the execution. In this case, the sheriff and County of *Franklin*, not the sheriff and County of *Chittenden*, for we have already seen that the 4th section of the act regulating gaols and gaolers, when establishing a liability in sheriffs for escapes, excepts the sheriff from any liability for the escape of such prisoners as may be committed from some other County.

*Daniel Chipman, e contra.* If all advanced by the defendant's counsel be true relating to the first and second exceptions in demurrer, advantage ought to have been taken in error, and not here. But it is observable, the first exception would not operate even in error; because by will executor may maintain ejectment, and to reverse the judgment it ought to be shewn, that executor can in no possible case maintain ejectment.

To the fourth exception, that the action cannot be maintained by the nominal plaintiff in ejectment, we observe, that it is true in actions of this kind a fictitious person is frequently introduced; but Judge *Blackstone* says it ought to be a real person. But if there be a real person, as in the present instance, the case cited from *Burrow* is in point, and puts it beyond all doubt. It shews that the action of ejectment may be brought each way; for in case of a *fictitious* plaintiff, the recovery is substantially for the lessor; when a *real* person, he recovers to the use of the lessor. The case of *Aslin* v. *Parkin* is not grounded merely on precedents, but is supported by the reason of the thing operating on all the Judges of *England.* That this mode of action is now put out of use by the late statute, can be no reason that a party should not have his remedy when pursued by existing laws.

With respect to the third and fifth exceptions, that the sheriff of *Franklin* County is in this case liable, we reply, that the sheriff is liable at common law *for all escapes;* and this is affirmed by the 4th section of the act relating to gaols and gaolers, already read.

*Bl. Com.* vol. 2.
p. 202.

The argument that the sheriff or County of *Frank-lin* is liable, proves too much; for then the sheriff and County of *Chittenden* would in no case be liable for the escape of prisoners committed from a foreign County; for it must be admitted, that the statute imposes some liability on the sheriff or County where every commitment is made legally.

The 37th section of the Judiciary act, which empowers the sheriff of a County where there is no gaol, to commit prisoners to some gaol in another County, makes it absolutely " the duty of the keeper of the gaol to receive such person or persons, and commit or keep him, her or them, within said gaol." Here is a strong liability imposed by the statute upon the present defendant, sheriff of *Chittenden* County. To avoid this liability, it is necessary to shew that it has been done away by this or some other statute, or by some decision of this Court; which is not even attempted.

Reliance is had upon the 4th section of the act relating to gaols and gaolers, which has an exception of persons committed from other Counties. This does not discharge the sheriff of *Chittenden* County from his general liability, and does not extend to *voluntary escapes*. If this were so in the case of *negligent escapes*, the County of *Franklin* or its sheriff must be always liable, let the conduct of the sheriff of *Chittenden*, or the laches of that County in neglecting to repair their gaol, be what they may. When a prisoner is committed from some other County to the gaol in *Chittenden* County, the sheriff may say, " In obedience to the statute I have received such prisoner, have committed and kept him within my

*Chipman v. Sawyer.*

*Vermont* Stat. vol. 1. p. 68.

Chipman
v.
awyer.

gaol. Here the obligation of the statute ceases. I will admit the prisoner to the liberties of the prison yard. He may escape, but I am not liable; for this prisoner was committed from another county, and the 4th section of the statute relating to gaols and gaolers, which constitutes my liability, excepts prisoners of this description." This would be absurd.

As to what has been advanced respecting the sheriff's power to charge his County in case of insufficiency of the gaol, or that he may give the circumstances of the prisoner, &c. in evidence on trial for escape, we have not precluded the sheriff from such defence here, but he has waived this, and relied upon his exceptions in demurrer.

*Israel Smith*, on the same side. The clause " excepting such prisoners as are committed from some other County," in the 4th section of the act relating to gaols and gaolers, goes merely to change the liability of the Counties ; and this is evident from a general view of all the statutes upon the subject: for if this exception is taken as absolute, there could be no bail-bonds taken in such case, or which would be valid if taken, which would deprive the citizen imprisoned of a right secured to him by the statute recited. This is a provision made in favour of personal convenience, though not in favour of entire liberty, to liberate prisoners from close, unnecessary, and often unwholesome confinement, and the merciful provision of the law ought to have its full effect. But upon the construction put upon the clause in exception above recited, the sheriff of *Chittenden* County might liberate all prisoners committed to his gaol

mont Stat.
vol i. p. 283.
· ·9.

from another County, or he might keep them in close
confinement.   The sheriff of *Franklin* County could
not compel him to take bonds for the liberties of the
gaol yard, or if sheriff of *Chittenden* County should
be pleased to take such bonds, he might be careless
as to the sufficiency of the bail, or by connivance
with the prisoner accept bail merely nominal ; for in
no case, according to the present doctrine, would he
be liable.   Indeed it would go to saddle the sheriff of
*Franklin* County with the debts of all persons he
might commit to the gaol of a foreign County.

Besides, if the exceptions in demurrer are valid,
they will go to get round the limitations of the writ
of error.   The act for the limitation of suits, &c.
limits the bringing of such suits to one year after the
rendering the judgment.   This operates as to curing
the defects in process ; but if, as in the present case,
any defects in process can be taken advantage of in
demurrer to a suit grounded on such process, brought
six years after the rendering such judgment, the de-
fects are not cured, and the limitation of the writ of
error is done away.

*Chauncey Langdon,* for the demurrant.   The ex
ceptions in demurrer are reduced to four.   I shall
notice them with the observations of the opposing
counsel in their order.

The principle advanced by Mr. *Chipman,* that the
two first exceptions ought to have been taken advan-
tage of in error, is not advanced with his usual cor-
rectness.   Here they must shew a regular judgment.
The distinction between a judgment that is *void* and
that which is merely *voidable,* is clear.   Errors under

*Chipman*
*v.*
*Sawyer.*

*Vermont Sta*
vol. 2. p. 40.
s. 11.

Chipman
v.
Sawyer.

the last are *dehors* the record, may be rectified by writ, and cured by the statute of limitations; but that which renders a judgment in *itself* void can never be cured by any lapse of time. In this case the instituting the action in the name of a stranger made the judgment void in the outset, and the defendant in the original suit might undoubtedly have had his action of false imprisonment against the sheriff, and so he would have, until the statute of limitations ran against such action. Surely the right which the defendant had to bring such action, which is extended to three years, could not have been abridged by the statute of limitation having operated upon the writ of error; which might be said to have cured the defects of the judgment. I am willing to concede, that the lapse of the statute time for bringing writs of error cures many defects on the record; but it does not cure those which are intrinsic the record, and substantially wrong. The statute of limitation obstructing a writ of error does not take away essential rights. If so, plaintiff may obtain judgment upon default upon a contract, to which it appears, from his own shewing in his declaration, he is an absolute stranger, without giving notice to the other party. He may then take out his writ of execution within the year and a day, or take out *alias*, *pluries*, &c. procuring formal *non est* returns, to keep his judgment alive, or, as in the present case, suffer his judgment to lie dormant, and then, by a bolder stroke, take out his writ of execution, and, in the face of a court of justice, triumphantly exclaim, " all the defects in my judgment are cured: the limitation has run against any writ of error." But the Court and the law will reply to him,

your judgment was surreptitiously obtained, or to bring it nearer to the present case, there is a radical defect in your writ. It is apparent, from the face of the record, that you had no right to sustain your action; and although the writ of error is limited, yet whenever you attempt to avail yourself of this judgment in a court of justice, this radical defect shall be noticed.

The second exception, it is said, could not have operated even in error. The case is put of executor being capable of maintaining ejectment by will. The case is rare; but if so, it would be for them to shew such case, and themselves within it, not for us to except to what is not shewn.

In reply to the observation upon the third exception: It is true, that during the trial the nominal plaintiff and his lessor appear to have but one interest. The former in our practice is but another name for the latter; and in some Counties it has been the practice, after entering the common rule in ejectment, to strike the name of the nominal plaintiff from the docket, and to head the action with the name of the lessor; but when the cause is terminated, we surely ought to hear no more of this fictitious being. There happening to be a person *in esse* of similar name with the nominal plaintiff, cannot change the nature of the thing. The nominal plaintiff never had existence but upon paper, and this mere name can have no rights.

Allowing full force to the gentleman's arguments, it appears to me, from an investigation of the statutes upon the subject of the liability of the sheriff, who has prisoners committed to his gaol from another

County, that the law has made no express provision which touches the present case. Many hard cases have been put, but no provision for them found in the statutes unless by a violent construction of them. If this was a *casus omissus*, it called perhaps for legislative interference. This Court have ample power to explain, but no power to amend the law. If the statutes have not made the sheriff of *Chittenden* County liable, it is not to the present purpose to inquire what sheriff or County is liable. It is sufficient, in the present case, that so much has been shewn as will fully exonerate our client.

### Opinion of the Court.

The Chief Judge delivered the opinion of the Court. *Hall absente.*

The Court consider all the exceptions in demurrer to have been well taken.

Although executor may bring his action for an ejectment in the life of the testator, yet the *ouster* counted upon in the record spread before us, was subsequent to the decease of the testate, and the lease specified is made with the executor and not with the testate in his life-time, and by the existing laws the action should have been in the name of the heirs.

The Court likewise consider the execution, *Darius Chipman* v. *Janna Churchill*, to have been illegally issued; consequently the commitment under it is illegal, and the sheriff not responsible for any escape either negligent or voluntary.

The Court further consider, that the nominal plaintiff in ejectment cannot maintain this action. There has been great diversity of opinion in *England* upon the rights to be imputed to the nominal plaintiff in ejectment; and the practice in this State has neither been uniform or settled, but productive of endless embarrassment. To render the course of justice plain, the Legislature have very wisely, by a late statute, abolished this ancient mode of bringing ejectment, with all its fictions, and substituted a mode grounded upon the principles of the writ of assise of novel disseisin; a mode simple in its nature, which sets forth the plaintiff's claim with brevity and precision, enables the defendant to know and prepare his proper defence, and renders the subject in controversy readily reducible to legal issue without those tedious preparatives which encumbered the record in the former action. But the Court, in their decision on this point, are directed by the existing laws, which governed the prior action of ejectment. Under the old regimen it was the object of this Court to divest the action of ejectment of its fictions as far as was any wise consistent with the form of the action which had been directed by statute, to consider the nominal plaintiff as *merely* nominal, as giving a mere docket name to the suit. Therefore no action for mesne profits has ever been sustained in this name; and if it was used as plaintiff in execution, or in the writ of *habere facias possessionem*, it was merely introductory to the name of the lessor, and for his use. The lessor of the plaintiff was put into possession by the sheriff, and so he returned on the writ. He also governed the writ of execution, and by his receipt it might be

*Chipman*
*v.*
*Sawyer.*

*Vermont* Stat.
vol. 1. p. 195.

*Chipman
v.
Sawyer.*

discharged. If the execution issued against the nominal plaintiff, it was merely as a preparatory step to bring a writ of *scire facias* against the lessor.

In the present case, a writ of *scire facias* should have been brought upon the judgment in the name of the lessor, and it should have been *allegated*, that the lessor recovered the judgment in the name of the nominal plaintiff, and the *quare* should have been, to shew cause why an execution should not issue upon the judgment in his own name ? and the Court would not have suffered the allegation to have been traversed. The maxim of the *English* civil code, " *ex fictione legis oritur jus*," must not be perverted to embarrass justice.

Sheriff, as keeper of the prison to which is committed a debtor from another county, not liable for a negligent escape.

There seems to be some difficulty in ascertaining the intention of the Legislature as to where the liability attaches in the case of a person arrested on execution in one County, and imprisoned in another. But upon a full investigation of all the statutes, it is the opinion of the Court, that the liability in this case does not attach to the sheriff of *Chittenden* County, the present defendant. Whether it attaches to the sheriff of *Franklin* County, may admit of some doubt.

It is therefore considered by the Court, that the declaration is insufficient, and that defendant have his costs.

*Israel Smith* and *Daniel Chipman*, for plaintiff.
*Chauncey Langdon* and *John Cook*, for defendant.